IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANTHONY V. BARBIERO           :        CIVIL ACTION
                              :
        v.                    :
                              :
GERALD S. KAUFMAN, et al.     :        NO. 12-6869


MEMORANDUM

McLaughlin, J.                                    July 30, 2013

           This action centers on a dispute over a particular
Philadelphia office building held in trust for several hundred
beneficiaries.  One of those beneficiaries, Anthony Barbiero,
filed a petition in the Orphans' Court Division of the
Philadelphia County Court of Common Pleas, seeking removal of the
current trustee, Gerald S. Kaufman Corporation ("Kaufman Corp."),
and its assignee, Gerald S. Kaufman, and their replacement by a
successor trustee *ad litem*.  Kaufman and Kaufman Corp. thereafter
removed Barbiero's suit to this Court.  Barbiero has filed a
motion to remand under 28 U.S.C. § 1447(c), arguing that this
Court lacks subject matter jurisdiction to adjudicate the
controversy.  The respondents have filed a motion to dismiss.

           Prior to the initiation of Barbiero's suit, Kaufman and
Kaufman Corp. filed a lawsuit in Illinois state court to reform
the operative trust agreement, which remains pending.  In their
suit, Kaufman and his company named Barbiero as one of the
defendants representing the entire class of trust beneficiaries.

           This Court held oral argument on the parties' motions

to remand and to dismiss on July 11, 2013.  The Court will now deny Barbiero's motion to remand.  In view of the first-filed and continuing Illinois court proceeding, it will, however, dismiss this case for lack of subject matter jurisdiction pursuant to the Princess Lida doctrine.

I.   Background

        The facts herein discussed are those necessary to determine whether this Court has subject matter jurisdiction, which is predicated on the parties' citizenship and the nature of the claims at issue, and to describe the relevant procedural background.  Facts are drawn from the assertions in Barbiero's petition filed in the Court of Common Pleas, the exhibits attached thereto, matters of public record, and other filings by the parties.  The only pleading allegations accepted as true for purposes of this motion are those in the petition concerning the structure of the trust at the heart of this litigation and the parties' relationships to that trust and its corpus, about which all parties appear to agree.

        A.   Structure of the Trust

        This lawsuit involves the Terminal Commerce Building located at 401 N. Broad Street in Philadelphia ("Property"), which is presently held in trust for over 600 tenant-in-common

beneficiaries.  The trust was created pursuant to a trust agreement executed in 1959.  Under the 1959 trust agreement, five individuals, referred to as "Nominees," purchased and agreed to hold title to and manage the Property as trustees.  Pet. ¶¶ 6, 10-12; PX A (9/1/59 Trust Agmt.) ¶ 1.[1]

The trust agreement provides that, aside from a 99-year leasehold estate granted to the Terminal Commerce Building of Philadelphia, Inc., "[t]he Nominees shall not sell or agree to sell, mortgage, encumber or transfer the real property . . . , except upon the written direction of all of the Tenants-In-Common."  Pet. ¶ 12; PX A ¶ 4.

On May 2, 1983, the Nominees entered into a new nominee agreement with respondent Gerald S. Kaufman, the son of one of the original Nominees.  Through that agreement, the original Nominees conveyed to Kaufman all of their powers and authority under the trust agreement.  Kaufman became the sole Nominee—i.e., trustee—holding title to and managing the Property on behalf of the tenants in common.  In 1999, Kaufman deeded title to the Property to his corporation, respondent Kaufman Corp.  Since that time, Kaufman Corp. has been the Nominee for the tenants in common, and Kaufman has been the company's assignee.  Pet. ¶¶ 18, 20-21.

---

[1] "PX" refers to the exhibits submitted by Barbiero in conjunction with his petition.

B.   <u>Illinois Reformation Action</u>

On August 9, 2012, Kaufman and Kaufman Corp. filed a suit in Illinois state court against three of the tenants in common: Nanette Appel-Bloom, Alan S. Jacobs, and Anthony Barbiero, the petitioner in this suit ("Illinois Action").  The Illinois Action was filed as a defendant class action lawsuit, in which the three defendants were named as representatives of all of the tenants in common.  PX B (Compl., <u>Kaufman v. Appel-Bloom</u>, No. 12-CH-30537 (Ill. Cir. Ct., Cook Cnty.)).

In their lawsuit, Kaufman and his corporation seek reformation of the trust agreement.  They argue that the provision requiring unanimous consent among the tenants in common before the Property may be mortgaged or sold has become unworkable given the sheer number of beneficiaries.  They claim that the more than 600 beneficiaries are spread among numerous states and several foreign countries, and that at least 45 of them cannot be located.  Moreover, according to the Illinois Action complaint, 511 tenants in common holding approximately 90% of the beneficial interests in the Property have already approved granting the Nominee power to mortgage or sell the Property without unanimous consent.  Kaufman alleges that only four beneficiaries, including Barbiero, have expressed any opposition to reforming the trust agreement in this manner.  <u>Id.</u> ¶¶ 2-3, 22-27.

Kaufman requests that the Illinois court exercise its reformatory authority to strike the unanimous consent provision from the trust agreement and replace it with a provision that reads as follows: "The Trustees (referred to above as Nominees), . . . may borrow money, sell, mortgage, encumber, assign rents of, and grant liens upon, the property that is the subject of this Agreement, in the exercise of reasonable prudence and judgment."  Kaufman further requests an order permitting Kaufman Corp. and him to deviate from the 1959 trust agreement and engage in any of those enumerated activities without written direction or approval of any of the tenants in common.  Id., Prayer (d)-(e) (quotation marks omitted).

Kaufman contends that the proposed reformation would permit Kaufman Corp. to obtain a new loan and mortgage on the Property.  Id. ¶ 29.

On May 30, 2013, upon Barbiero's motion, the Illinois court dismissed him as a defendant for lack of personal jurisdiction.  The court determined that Barbiero has an interest in a trust administered in the state of Illinois, which satisfies the requirement for assertion of jurisdiction under Illinois' long-arm statute.  Nevertheless, the Illinois court found that actually exercising jurisdiction over Barbiero would offend due

process because he lacked minimum contacts with the state.[2]
Kaufman v. Appel-Bloom, No. 12-CH-30537 (Ill. Cir. Ct., Cook
Cnty. May 30, 2013).  The Illinois Action otherwise remains
pending.

C.   *Barbiero* Action

The suit presently before this Court was instituted by
Barbiero in the Philadelphia County Court of Common Pleas on
November 14, 2012.  Barbiero and his wife jointly hold a 0.0549%
ownership interest in the Property as tenants in common.  Relying
on Pennsylvania law, Barbiero seeks to remove Kaufman Corp. as
trustee and Kaufman as its assignee, and asks that a successor
trustee *ad litem* be installed in their place.  Pet. ¶¶ 5, 66-87.

Barbiero alleges that Kaufman and Kaufman Corp. have
breached their duties to (a) administer the trust in good faith
in accordance with the trust's provisions and purposes and in the
interests of the beneficiaries; (b) be free from conflicts of
interest; (c) act impartially in investing, managing, and
distributing trust property; (d) administer the trust as would a
prudent person; and (e) take reasonable steps to take control of
and protect the trust property.  In support of his contentions,

_____

[2] According to the parties, the Illinois court has granted a
motion by Kaufman and Kaufman Corp. for an interlocutory appeal
of that order dismissing Barbiero.  7/3/13 Letter from B. Robins
at 1 n.1; 7/11/13 Hr'g Tr. at 5-6.

Barbiero asserts that Kaufman violated the terms of the trust agreement when he transferred title to the Property to Kaufman Corp. without the unanimous consent of all tenant-in-common beneficiaries and that Kaufman and Kaufman Corp. violated the same provision of the agreement by issuing a mortgage on the Property to Aries Capital Incorporated ("Aries"), again without the beneficiaries' unanimous consent. Barbiero also claims that Kaufman has a financial interest in the company that ultimately succeeded Aries as mortgagee on the aforementioned mortgage, which creates a conflict of interest given his duties and obligations as a trust fiduciary. Furthermore, Barbiero contends that Kaufman continues to mismanage the trust, risking foreclosure on the Property. Id. ¶¶ 46, 59, 70-75, 77-78.

On November 16, 2012, the Orphans' Court issued an order to show cause why Kaufman Corp. and Kaufman should not be removed as trustees and why a successor trustee *ad litem* should not be appointed to administer the affairs of the Property. 12/13/12 Mattioli Decl., Ex. A (Decree, In Re: Tenants in Common of 401 N. Broad St., No. 123520 (Pa. Ct. Com. Pl., Phila. Cnty. Nov. 16, 2012)) (Docket No. 3). Rather than submit a response, the respondents removed the case to federal court on December 7, 2012. They contend that federal jurisdiction is supplied by diversity among the three named parties or the Class Action Fairness Act ("CAFA") because Barbiero's suit is, in effect, a

class action brought on behalf of all of the tenant-in-common beneficiaries.  12/7/12 Notice of Removal (Docket No. 1).


II.  Analysis

Barbiero has moved to remand this action back to the Pennsylvania Orphans' Court on several grounds.  First, Barbiero disputes the bases for subject matter jurisdiction asserted by the respondents in their notice of removal; he contends that this Court lacks subject matter jurisdiction under either traditional diversity principles or CAFA.  Second, Barbiero asserts that, as between this Court and the Orphans' Court, the Princess Lida doctrine confers exclusive subject matter jurisdiction in this trustee removal suit on the Orphans' Court.  Finally, Barbiero argues that, even if removal was jurisdictionally proper, this Court should use its inherent abstention power to remand the case to the Court of Common Pleas.

The Court finds that there is complete diversity among the parties, creating a basis for subject matter jurisdiction. It also concludes that remand is not warranted by the Princess Lida rule or principles of abstention.  The Court finds that the Princess Lida rule does, however, require it to defer to the prior exclusive jurisdiction over the trust and its property asserted by the Illinois court.  For that reason, it will dismiss this suit without prejudice.

A.  Diversity Jurisdiction

Invocation of a federal court's diversity jurisdiction under 28 U.S.C. § 1332 requires complete diversity of citizenship between plaintiffs and defendants.  Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267 (1806); Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 247 (3d Cir. 2013).  With respect to individuals, their citizenship is governed by the state of their domicile.  Swiger v. Allegheny Energy, Inc., 540 F.3d 179, 182 (3d Cir. 2008).  Domicile, unlike residency, is measured by physical presence within a jurisdiction "coupled with a subjective intention to remain there indefinitely."  Washington v. Hovensa LLC, 652 F.3d 340, 344 (3d Cir. 2011).  Allegations pertaining solely to a litigant's residency are insufficient to establish a court's diversity jurisdiction.  McNair v. Synapse Grp., Inc., 672 F.3d 213, 219 n.4 (3d Cir. 2012); see also Krasnov v. Dinan, 465 F.2d 1298, 1300 (3d Cir. 1972).

In his motion to remand, Barbiero asserted that the respondents had failed to demonstrate the existence of diversity jurisdiction, as their notice of removal averred that he and Kaufman were residents of different states, but did not set forth their states of domicile.  See 12/7/12 Notice of Removal ¶ 3.  Barbiero concedes, and the Court agrees, that the respondents have now clarified that Barbiero and Kaufman are domiciliaries, and not just residents, of New York and Illinois, respectively,

thereby establishing complete diversity among the named parties.[3]
See 12/26/12 Kaufman Decl. ¶¶ 2-4 (Docket No. 5-1).

At oral argument, Barbiero raised a new jurisdictional objection. He argues that the trust managed by the respondents is itself a party to this litigation and, regardless of whether considered to be a petitioner or respondent, its inclusion destroys diversity because it has beneficiaries who share citizenship with Barbiero and with Kaufman. See Emerald Investors Trust v. Gaunt Parsippany Partners, 492 F.3d 192, 205 (3d Cir. 2007) (holding that a trust's citizenship is determined by that of its trustee and all of its beneficiaries).

Barbiero bases his argument on the fact that the relief he seeks is not just for his own benefit, but for the benefit of the trust and all of its beneficiaries. He relies on analogy to corporate law, arguing that this is much like a shareholder derivative suit. In such an action, the corporation is a real party in interest and has traditionally been included as an

---

[3] The other respondent, Kaufman Corp., is a citizen of Delaware, its state of incorporation, and Illinois, where it has its principal place of business. Pet. ¶ 3. It does not share Barbiero's New York citizenship. The parties are also in agreement that the $75,000 amount-in-controversy requirement has been met, and the Court sees no reason to dispute their assessment. The Property has been valued at no less than $5 million. See 12/7/12 Notice of Removal ¶¶ 2, 4. Even considering only Barbiero's 0.0549% interest in the Property, which is allegedly endangered by the respondents' mismanagement, his share is also valued at well over $75,000. It does not appear "to a legal certainty" that Barbiero risks an injury that falls below the jurisdictional threshold. Frederico v. Home Depot, 507 F.3d 188, 195 (3d Cir. 2007) (citation omitted).

indispensable party, with its citizenship considered for diversity purposes. See Ross v. Bernhard, 396 U.S. 531, 538 (1970); HB Gen. Corp. v. Manchester Partners, L.P., 95 F.3d 1185, 1196 (3d Cir. 1996); 7C Charles A. Wright, et al., Federal Practice & Procedure § 1822 (3d ed. 2007).

As the respondents point out, however, Pennsylvania law on shareholder standing differs markedly from Pennsylvania trust law. Under Pennsylvania law, "an action to redress injuries to the corporation cannot be maintained by an individual shareholder, but must be brought as a derivative action in the name of the corporation." Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc., 267 F.3d 340, 348 (3d Cir. 2001) (superseded on other grounds) (quotation marks and citations omitted). As a consequence, the corporation is included as a party.

The statute under which Barbiero commenced this proceeding, on the other hand, does not incorporate any such derivative standing principle. That statute permits a single beneficiary to petition for removal of a trustee, and nowhere says that the action must be brought on behalf of the trust. 20 Pa. Cons. Stat. Ann. § 7766(a). Indeed, Pennsylvania law requires a court to hold an evidentiary hearing as to the trustee's fitness upon the removal petition of "*any* party in interest" and even permits a court to remove a trustee on its own

initiative.  Id. §§ 3183, 7766(a), 7766(d) (emphasis added).  It is true that the standard for removing a trustee requires consideration of "the interests of the beneficiaries" and removal cannot be "inconsistent with a material purpose of the trust." Id. § 7766(b).  That does not mean, however, that the trust is the true party in interest or an indispensable party.  Nor does it mean that a beneficiary seeking trustee removal lacks standing to sue in his own right.

The Court concludes that the trust is not a separate party to this proceeding, and subject matter jurisdiction exists based on complete diversity among the three named parties.  The Court need not, therefore, reach the respondents' alternative claim that jurisdiction may be exercised under CAFA.

## B.    The *Princess Lida* Rule

The Court now turns to Barbiero's argument in favor of remand based on the application of the Princess Lida doctrine.

### 1.    General Precepts of *Princess Lida*

It has long been a binding principle in federal and state courts that "the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts."  Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 818 (1976); see also Princess Lida of Thurn & Taxis

v. Thompson, 305 U.S. 456, 466 (1939); United States v. Bank of
N.Y. & Trust Co., 296 U.S. 463, 477 (1936).

That principle was expressed in terms most applicable
to the present controversy in the Supreme Court's 1939 decision
in Princess Lida of Thurn & Taxis v. Thompson.  In that case,
trustees of a fund in which Lida and her sons were beneficiaries
brought an accounting action in the Pennsylvania Court of Common
Pleas.  One day later, Lida and one of her sons filed suit in
U.S. district court, seeking restoration of the trust corpus and
removal of the trustees based on allegations of their
mismanagement.  305 U.S. at 458-60.

The Supreme Court held that both actions were *quasi in
rem*, involving the exercise of judicial authority over the same
trust property, and, because the Court of Common Pleas asserted
jurisdiction first, the district court lacked jurisdiction to
hear the later-filed suit.  Id. at 465-68.  The Supreme Court
noted that it was not necessary for the first court to actually
seize the property to preclude other courts from adjudicating
subsequently filed suits regarding the same *res*.  The principle
of exclusive jurisdiction applied with equal force "where suits
are brought to marshal assets, administer trusts, or liquidate
estates, and in suits of a similar nature where, to give effect
to its jurisdiction, the court must control the property."  Id.
at 466.  In order for the first court to control the property

without interference and grant the relief requested, "the jurisdiction of the [second] court must yield." Id. at 466. Such a doctrine, according to the Supreme Court, was "necessary to the harmonious cooperation of federal and state tribunals." Id.

The Court of Appeals for the Third Circuit has held that the Princess Lida principle, also known as the prior exclusive jurisdiction doctrine, applies where (1) both the first and second litigations are in rem or quasi in rem, and (2) "the relief sought requires that the second court exercise control over the property in dispute and such property is already under the control of the first court." Dailey v. Nat'l Hockey League, 987 F.2d 172, 176 (3d Cir. 1993). For purposes of the first stage of analysis, the relevant inquiry is whether the proceedings at issue are in rem or quasi in rem within the meaning of the Princess Lida decision, itself. See id. at 177; Shaw v. First Interstate Bank of Wis., N.A., 695 F. Supp. 995, 999 (W.D. Wis. 1988).

In this circuit, Princess Lida establishes a "mechanical rule" regarding subject matter jurisdiction. Dailey, 987 F.2d at 175-76 (quotation marks omitted). Indeed, Dailey expressly read the Supreme Court's decision in Princess Lida as setting forth a "doctrine in terms of subject matter

jurisdiction."[4]  Id. at 175.  Where the rule applies, a district

court presiding over the second-filed case lacks subject matter

jurisdiction to hear the proceeding before it and must defer to

the court entertaining the suit that was brought first.  Id. at

176.


        2.  *Princess Lida* and Remand

        Barbiero argues that the rule of Princess Lida requires

this Court to remand the instant action to the Philadelphia

County Court of Common Pleas.  He contends that the Orphans'

Court effectively asserted exclusive jurisdiction over the

Property, the corpus of the trust at issue in this case, when it

directed the respondents to file an answer to the petition and to

show cause why they should not be removed as trustees and be

replaced by a successor trustee *ad litem*.

        The Court finds this argument unconvincing.  It is

clear from the reasoning of Princess Lida that its governing

_____

        [4] Courts of appeals in other circuits have framed the
Princess Lida rule as an application of prudential abstention,
albeit abstention that does not appear to be discretionary.  See
Sexton v. NDEX West, LLC, 713 F.3d 533, 536 n.5 (9th Cir. 2013)
(finding that the prior exclusive jurisdiction doctrine is not a
rule of subject matter jurisdiction, but rather, "a prudential
(although mandatory) common law rule of judicial abstention");
Carvel v. Thomas & Agnes Carvel Found., 188 F.3d 83, 86 (2d Cir.
1999) (describing the Princess Lida rule as a "rule of comity or
abstention, rather than one of subject matter jurisdiction");
Crawford v. Courtney, 451 F.2d 489, 492 (4th Cir. 1971)
(referring to "compulsory Princess Lida-type abstention").

principle was designed to prevent two courts from asserting overlapping and potentially conflicting authority over a single piece of property. The Princess Lida doctrine has no application where there is only one suit removed from state to federal court, as opposed to two parallel proceedings separately filed in those fora. Here, the proceedings in Pennsylvania and federal court form a single case, brought in the former and removed to the latter. Indeed, a properly filed notice of removal places "sole jurisdiction" in the federal court, stripping the state court of jurisdiction. In re Diet Drugs, 282 F.3d 220, 231 n.6 (3d Cir. 2002). No federal-state disharmony will result from transferring adjudication of matters pertaining to the Property from the Orphans' Court to this Court, and the Princess Lida rule cannot be used to remand this action.[5]

---

[5] Other district courts considering the issue have split over whether the prior exclusive jurisdiction principle presents cause for remand. Compare Jones v. Home Mortg. Direct Lenders, No. 12-289, 2012 WL 6645612, at *2 (D. Nev. Dec. 20, 2012); Brinkman v. Bank of Am., N.A., No. 11-3240, 2012 WL 3582928, at *16 (D. Minn. Aug. 17, 2012); Gogert v. Reg'l Tr. Servs., Inc., No. 11-1578, 2012 WL 289205, at *2-3 (W.D. Wash. Jan. 31, 2012); Barr v. Hagan, 322 F. Supp. 2d 1280, 1282 (M.D. Ala. 2004); Am. Lung Ass'n of N.H. v. Am. Lung Ass'n, No. 02-108, 2002 WL 1728255, at *3 (D.N.H. July 25, 2002) (all finding that Princess Lida does not apply to a single case removed from state to federal court); with Mellon Bank, N.A. v. Poling, No. 04-1461, 2004 WL 1535799, at *4 (E.D. Pa. June 10, 2004); Glenmede Trust Co. v. Dow Chem. Co., 384 F. Supp. 423, 432-34 (E.D. Pa. 1974) (both remanding a removed *quasi in rem* suit, finding that, pursuant to Princess Lida, it should remain in the Orphans' Court where it was originally filed). It bears noting that, in Glenmede, the court's application of the Princess Lida doctrine was not central to its disposition of the case. The Glenmede

C.    <u>Abstention</u>

As a final argument in favor of remand, Barbiero appeals to the Court's powers of abstention.  He argues that, even if this Court has jurisdiction to adjudicate the present suit, it should decline to do so and should instead remand the action back to the Orphans' Court, given its expertise in the area of trusts and estates.  Notwithstanding the Orphans' Court's greater familiarity with Pennsylvania trust law, the Court does not find remand warranted on the facts presented.

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." <u>Colo. River</u>, 424 U.S. at 817.  Once federal jurisdiction is properly invoked, abstention is appropriate only in limited circumstances.  <u>See</u> <u>Hi Tech Trans, LLC v. New Jersey</u>, 382 F.3d 295, 303 (3d Cir. 2004) (identifying the accepted bases for abstention, drawn from Supreme Court precedent).

Barbiero does not even attempt to demonstrate how this suit falls into one of the recognized categories of abstention. Moreover, he does not articulate and the Court fails to perceive how the exercise of federal jurisdiction will impede judicial economy or comity interests, which underlie several branches of abstention doctrine, vis-a-vis the Pennsylvania courts.

---

court looked to that rule as an additional reason for remand only after determining that it otherwise lacked subject matter jurisdiction.  384 F. Supp. at 433-34.

Chiropractic Am. v. Lavecchia, 180 F.3d 99, 103 (3d Cir. 1999).

Significantly, there is no concurrently pending suit regarding this trust in Pennsylvania court.  Nor, as far as this Court can tell, does the petition raise novel or unsettled issues of Pennsylvania law that a state tribunal could more effectively resolve.  See Ryan v. First Pa. Banking & Trust Co., 519 F.2d 572, 575 (3d Cir. 1975).  Federal review of Pennsylvania's well-established laws regarding trustees' fiduciary duties also does not risk disruption to a comprehensive scheme or interference with the articulation of a "coherent public policy" in the Commonwealth.  Chiropractic Am., 180 F.3d at 105 (citing New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 361 (1989)).  The fact that the Orphans' Court may have more experience analyzing these issues is not, standing alone, sufficient cause for abstention.

The Third Circuit precedent on which Barbiero relies does not counsel in favor of a different result.  In Reichman v. Pittsburgh National Bank, cited by Barbiero, the Third Circuit affirmed the district court's decision to dismiss on abstention grounds a suit against a trustee for a surcharge and an accounting of trust assets in favor of an accounting action also pending in the Orphans' Court.  465 F.2d 16, 17-18 (3d Cir. 1972).  Although recognizing the Orphans' Court's "special ability . . . to decide [such] issues in view of its exclusive

-18-

state jurisdiction over trusts and estates," the Court of Appeals also cited efficiency interests as a justification for abstention. The court expressly relied on the fact that there was a "substantial identity" of issues raised in the federal and Orphans' Court proceedings in determining that abstention had been proper. The procedural posture of this case is substantially different. Here, there is no separate Orphans' Court suit with which this Court may interfere or where the claims in this suit may be consolidated. Whatever the possibility for abstention based on the Orphan Courts' expertise where parallel proceedings exist, the absence of any concurrent suit counsels strongly against abstention.[6]

Furthermore, if any court has established a familiarity with the claims at issue in this case, it is this Court. As both sides acknowledge, Barbiero's claims duplicate in large measure the causes of action in the Appel suit over which this Court previously presided. The Court did not engage in a full merits analysis of the Appel Action claims, instead granting judgment in favor of Kaufman, Kaufman Corp., and other defendants in that suit on the basis of the statute of limitations and laches.

---

[6] Similarly, in Mellon Bank, an Eastern District of Pennsylvania case, the court cited the Orphans' Court's specialized expertise in trust law as a reason for remand, but only after finding that its own subject matter jurisdiction was doubtful. 2004 WL 1535799, at *4-5. Moreover, in that case, unlike the one at bar, the Orphans' Court had previously asserted jurisdiction over the trust property in separate proceedings, conducting the initial trust accounting. Id. at *5.

Nevertheless, the Court's oversight of the <u>Appel</u> Action over several years provides it with a background pertinent to the legal and factual issues now at play.

Finally, the Court is guided by recent Supreme Court precedent limiting the circumstances under which federal courts should cede jurisdiction over state law claims because they fall within the traditional province of state courts. In <u>Marshall v. Marshall</u>, the Supreme Court chided the lower federal courts for too liberally construing the carve-outs to federal diversity jurisdiction for domestic relations and probate matters. 547 U.S. 293, 299 (2006). The Court found that each exception operated to preclude jurisdiction in only a narrow range of cases. <u>Id.</u> at 307, 311-12. Notably, neither exception applies to pure issues of state trust law. <u>See, e.g.</u>, <u>Curtis v. Brunsting</u>, 704 F.3d 406, 410 (5th Cir. 2013); <u>Evans v. Pearson Enters., Inc.</u>, 434 F.3d 839, 847-49 (6th Cir. 2006). The <u>Marshall</u> Court's reasoning, based on the admonition that federal courts "'have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given,'" is, therefore, all the more forcefully felt in trust administration cases, where jurisdiction is concededly proper. <u>Marshall</u>, 547 U.S. at 298-99 (quoting <u>Cohens v. Virginia</u>, 19 U.S. (6 Wheat.) 264, 404 (1821)).

In short, <u>Marshall</u> makes clear that federal courts have

-20-

exceedingly limited warrant to simply yield jurisdiction on matters of state law. For that reason, the Court expresses great wariness of abstaining in this trustee removal suit merely because such claims are generally brought in the Orphans' Court.

Under these circumstances, the Court finds that remand based on abstention is not merited.


D. *Princess Lida* and Dismissal

Although the Court finds that remand is not required under the rationale of Princess Lida, it concludes that the prior exclusive jurisdiction rule does require it to dismiss this action in favor of the Illinois Action, which was filed some three months before this case.

As a preliminary matter, Barbiero argues that the Court should not defer to the Illinois court because his motion exclusively seeks remand to the Court of Common Pleas. The respondents also have not formally moved for dismissal on Princess Lida grounds, although they raised the possibility of dismissal on that basis in their opposition to Barbiero's motion to remand. In opposing the remand motion, the respondents maintained that, if the Court determined this suit to be an *in rem* or *quasi in rem* action, then it should similarly find the Illinois Action to be *in rem* or *quasi in rem* and dismiss this

case in favor of the earlier-filed suit in Illinois.[7]

Notwithstanding the scope of the parties' formal
motions, the Court has the power to dismiss this suit *sua sponte*.
The Third Circuit has characterized the principle behind Princess
Lida as one that governs federal courts' subject matter
jurisdiction. Dailey, 987 F.2d at 175-76. Subject matter
jurisdiction is non-waivable, and courts always have an
obligation to satisfy themselves that such jurisdiction exists.
Nesbit v. Gears Unlimited, Inc., 347 F.3d 72, 76-77 (3d Cir.
2003) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,
429 U.S. 274, 278 (1977)). "A necessary corollary is that the
court can raise *sua sponte* subject-matter jurisdiction concerns."
Id.; see also Fed. R. Civ. P. 12(h)(3). In addition, each side
has already presented legal briefs and oral argument as to

---

[7] At oral argument, the respondents altered their position.
Counsel for the respondents clarified that they viewed neither
this suit nor the Illinois Action as *in rem* or *quasi in rem*,
although counsel conceded that he was somewhat unfamiliar with
the distinction between those concepts. Proceeding under the
assumption that both aforementioned actions were *in rem* or *quasi
in rem*, though, respondents' counsel argued that this Court was
the first to assert jurisdiction over the trust when it
adjudicated the Appel Action and should retain jurisdiction on
that basis. Contrary to counsel's contention, this Court's
jurisdiction does not trump that of the Illinois state court
under Princess Lida. By any measure, the Appel Action concluded
before commencement of the Illinois Action, and this Court did
not continue to exercise jurisdiction over the trust once the
Appel Action ended. Thus, when the Illinois Action began, this
Court did not still have jurisdiction over the trust. In terms
of the priority of jurisdiction, the Illinois court comes before
this Court.

whether dismissal based on the <u>Princess Lida</u> rule is appropriate.

Moving to the first step of the <u>Princess Lida</u> analysis, the Court must determine if both the Illinois Action and this litigation qualify as *in rem* or *quasi in rem* suits. For purposes of this doctrine, the Supreme Court has stated that actions to "administer trusts" are considered to be *quasi in rem*. <u>Princess Lida</u>, 305 U.S. at 466.

Of course, not every action that somehow relates to or implicates a trust qualifies as a *quasi in rem* administration action. The primary distinction in this area of the law is weeding out claims that seek only to adjudicate an individual's right to trust property or tort suits against a trustee in his or her individual capacity. <u>See</u> <u>Dailey</u>, 987 F.2d at 176. Such suits are *in personam* and do not trigger application of the <u>Princess Lida</u> principle. <u>See, e.g.</u>, <u>Princess Lida</u>, 305 U.S. at 466-67 (noting that a party's suit to establish a property interest in trust assets is an *in personam* question that does not involve exclusive jurisdiction concerns); <u>Marshall v. Lauriault</u>, 372 F.3d 175, 180-81 (3d Cir. 2004) (finding that a determination of rights in a trust among the parties does not concern *in rem* claims requiring jurisdiction over a trust corpus); <u>Al-Abood ex rel. Al-Abood v. El-Shamari</u>, 217 F.3d 225, 229, 232 (4th Cir. 2000) (finding a suit seeking only money damages for tort and RICO claims to fall beyond the scope of <u>Princess Lida</u>); <u>Sw. Bank</u>

& Trust Co. v. Metcalf State Bank, 525 F.2d 140, 142-43 (10th Cir. 1975) (determining that a suit seeking money damages from a trustee for breach of duties under trust instruments was *in personsam*).

Judged against this backdrop, both the present suit and the Illinois Action qualify as property-based claims under the Princess Lida standard. Neither involves claims for money damages or a determination of individual property rights. Instead, each is intimately connected to issues of actual trust administration.

The forms of relief sought in the suit presently before this Court, removal of the trustee and installment of a judicially appointed successor, are similar to those at issue in Princess Lida itself. In Princess Lida, the second-filed federal action involved, among other things, a request for removal of the trustee. The Supreme Court found that the claims before the district court related "solely . . . to administration" of the trust and were properly denominated as *quasi in rem*. 305 U.S. at 466-67. The Pennsylvania Supreme Court, whose decision was affirmed in Princess Lida, similarly described actions to remove and appoint trustees as forms of trust administration and management that fall within the class of claims governed by the prior exclusive jurisdiction principle. Thompson v. Fitzgerald, 198 A. 58, 65-66 (Pa. 1938); see also Singer v. Dong Sup Cha, 550

A.2d 791, 792 (Pa. Super. Ct. 1988).

Other courts have subsequently found that "a suit that concerns or determines the ownership, control and administration of a trust and the powers, duties and liabilities of the trustees is either *in rem* or *quasi in rem*." Cassity v. Pitts, 995 F.2d 1009, 1012 (10th Cir. 1993); see also Jage v. Trust Co. of Okla., No. 06-249, 2009 WL 3241659, at *5 (N.D. Okla. Sept. 30, 2009) (noting that actions affecting the identity of trustees are *quasi in rem*); Silberman v. Worden, No. 87-8368, 1988 WL 96537, at *3 (N.D. Ill. Sept. 15, 1988) (same).

Moreover, pursuant to Pennsylvania law, this Court is not limited to granting relief in the form of removing the present trustees and may order interim, alternative, or additional forms of relief. For instance, the Court may require the respondents to file an account or restore trust property. 20 Pa. Cons. Stat. Ann. §§ 7766(c), 7781(b). Such forms of relief are also *quasi in rem* for purposes of Princess Lida. Princess Lida, 305 U.S. at 463-67; Dailey, 987 F.2d at 175, 177.

The respondents have not offered and the Court has not found any cases discussing whether actions to reform a trust agreement under Illinois law, such as the Illinois Action, are classified as *in rem* or *quasi in rem*. Nevertheless, the Court concludes that the Illinois state court suit comes within the ambit of Princess Lida, as well. The litigation in Illinois

clearly centers on administration of the trust, and, more
specifically, administration of trust property, as well as
defining the powers of the Property's trustee.  Indeed, the main
objectives of Kaufman and Kaufman Corp. in bringing the
reformation action is to change a provision in the trust's
governing document regarding how the trustee may confer rights to
the Property and to give Kaufman Corp. the authority to grant
third parties mortgages and other ownership interests in the
Terminal Commerce Building without prior approval of the
beneficiaries.  Cf. Dailey, 987 F.2d at 176-77 (determining that
an action involving interpretation of a pension plan and
application of its terms to a trust is brought *quasi in rem*);
Cassity, 995 F.2d at 1012 (classifying suits over the
"powers[ and] duties . . . of the trustee" as *in rem* or *quasi in
rem*).

        Next, the Court must determine whether the relief
sought in this suit requires it to exercise control over property
already under the jurisdiction of the Illinois court.[8]  Dailey,
987 F.2d at 176.  Essentially, this inquiry seems to require the

_____

        [8] At one point in the Dailey opinion, the Third Circuit
refers to this part of the Princess Lida analysis as asking
whether the claims in the two suits are "essentially the same."
987 F.2d at 177.  That appears to be a bit of a misnomer.  The
relevant question, as stated earlier in that opinion and
reflected in the Dailey court's analysis, is whether the second
court is being asked to exercise control over a piece of property
already under the first court's jurisdiction.  Id. at 176-77.

-26-

Court to assess whether its assertion of jurisdiction would cause the sort of inter-jurisdictional disharmony over property-based claims that the prior exclusive jurisdiction doctrine seeks to avoid.

That standard is met here. Even though, as Barbiero points out, the relief requested in the two cases is different, a disposition of this case could well interfere with the proceedings in the Illinois Action. In that litigation, Kaufman Corp. and Kaufman, relying on their powers as trustee and assignee, seek to reform the terms of the trust. Quite plainly, if this Court were to remove them from their positions, as Barbiero requests, it would greatly impede the trust administration proceedings of the Illinois Action and call into question the justiciability of that suit.

The fact that Barbiero was dismissed from that action for lack of personal jurisdiction does not require a different outcome. That is not simply because the order dismissing him as a defendant is currently on interlocutory appeal, placing his status in the Illinois Action in limbo. It is because the Princess Lida rule is concerned with courts' jurisdiction over a particular trust or piece of property. Barbiero's dismissal from the Illinois Action, even if affirmed, does not end that suit. There remain two other named defendants representing an entire class of beneficiaries in that case, and the Court has no reason

to believe that the Illinois court has dismissed or will similarly dismiss them. The Illinois court, therefore, continues to exercise jurisdiction over the trust property to the exclusion of this Court. Accordingly, the Court must cede jurisdiction to the previously filed and ongoing Illinois Action, and will dismiss Barbiero's suit.

III. <u>Conclusion</u>

For the foregoing reasons, the Court will deny Barbiero's motion to remand this suit to the Pennsylvania Court of Common Pleas and will instead dismiss this action.[9] An appropriate order shall issue separately.

---

[9] Because the respondents have not specifically requested dismissal based on the mandatory rule propounded in <u>Princess Lida</u>, the Court does not, strictly speaking, grant their motion to dismiss.